Adam JOHNSTON, a minor, by Susan Johnston, his mother and next friend, and Susan Johnston and Garnett Johnston, Plaintiffs,

v.

DEERE & COMPANY, Defendant.

Civil No. 96–192–P–H.

United States District Court, D. Maine.

June 9, 1997.

George W. Beals, Thomas J. Quinn, Beals & Quinn, Portland, ME, for Plaintiffs.

Harold J. Friedman, Tracy D. Hill, Friedman & Babcock, Portland, ME, for Defendant.

## ORDER ON THE APPLICABILITY OF 15 U.S.C. § 2074(b) [1]

HORNBY, Chief Judge.

The Consumer Product Safety Act provides:

1. I ruled orally from the bench on this motion on April 28, 1997, and told the lawyers that I expected to follow up with a written ruling because of the absence of reported caselaw on this issue. This is the written ruling I promised.

The failure of the [Consumer Product Safety] Commission to take any action or commence a proceeding with respect to the safety of a consumer product shall not be admissible in evidence in litigation at common law or under State statutory law relating to such consumer product.

15 U.S.C. § 2074(b).

In the 1970s, the Commission ("CPSC") gathered information about the dangers of riding lawn tractors and the advisability of "no mow in reverse" ("NMIR") devices. It initially issued a notice of proposed rulemaking to adopt an NMIR requirement, 42 Fed. Reg. 23,052, 23,071 (1977), but then later withdrew the proposed rulemaking, 49 Fed. Reg. 3 1,908(1984). The issue in this products liability action brought under Maine law against a lawn tractor manufacturer for injuries allegedly caused by a defective lawn tractor is whether that sequence of CPSC activities qualifies as "failure of the Commission to take any action" that is not admissible in evidence under section 2074(b).

The plaintiffs want to introduce evidence that Consumers Union, at the request of the CPSC, gathered information and proposed an NMIR requirement in 1975 that led to the CPSC notice of proposed rulemaking. This evidence bears upon what manufacturers knew or should have known at the time about safety concerns, technical feasibility, etc. The defendant manufacturer, in turn, wants to introduce evidence that, after considering the proposed NMIR requirement, the CPSC ultimately rejected it. This activity, it would then argue, supported its own decision not to incorporate an NMIR into its riding lawn tractors. The plaintiffs object to the latter evidence, citing section 2074(b) as making it inadmissible.

The "plain language" of section 2074(b) is, on thoughtful examination, not very plain; instead, there is an inherent ambiguity. Does "failure ... to take any action" mean utter failure to act-i.e., total absence of any

action at all on the part of the Commission? If so, since the CPSC did not remain completely passive on this topic, section 2074(b) would not prevent the defendant or the plaintiff from introducing evidence about what activities the CPSC did engage in. Under this analysis, the activities of the Commission do not amount to "failure ... to take any action." Or does "failure ... to take any action" mean failure to do something effective in a legal sense, like failing to promulgate a rule or standard? If so, then the withdrawal of the proposed rulemaking should be inadmissible, because it amounts to an ultimate failure by the CPSC to take action on NMIR devices.[2]

Since the plain meaning is ambiguous, I look for help in the legislative history. *See Lomas Mortgage, Inc. v. Louis,* 82 F.3d 1, 4 (1st Cir.1996) (citing *United States v. O'Neil,* 11 F.3d 292, 297–98 (1st Cir.1993)). Subsection (a) provides that compliance with an adopted CPSC rule "shall not relieve any person from liability at common law or under State statutory law." The legislative history for this subsection confirms that it was expected that such compliance-i.e., the action of the CPSC adopting the rule and the action of the manufacturer complying with it-would be admitted as evidence, but would not be determinative of the outcome. Thus, the Final Report of the National Commission on Product Safety, the document that led to the legislation, states: "While compliance should be accepted as evidence, the court must still decide whether common-law requirements are in fact higher than a standard of uncertain merit." National Commission on Product Safety, Final Report Presented to the President and Congress, June 1970, at 76. The Senate Commerce Committee Report "reaffirms the fact that product safety standards promulgated in accordance with this bill are 'minimum' standards. Therefore, in product liability litigation compliance with applicable Federal safety standards would not *automatically* create a defense for the

---

**2.** The alternative phrase "or commence a proceeding" seems to support the first, rather than the second, reading. "[C]ommence a proceeding" is a statutory term of art, 15 U.S.C. § 2058, that would seem to be included within "failure ... to take any action" under the second defini-

tion and therefore superfluous. On the other hand, Congress does from time to time add redundant expressions for emphasis or as part of the penchant of lawyers to use several descriptions where one would suffice.

manufacturer." Consumer Safety Act of 1972, Report of Senate Commerce Committee, S. Rep. No. 92–749, *reprinted in* Bureau of National Affairs, The Consumer Product Safety Act app. 61, 100 (1973) (emphasis added). Commentary reflects the same understanding: "Typical products liability litigation will henceforth involve an additional fact that may be argued to the judge or jury-that is, the defendant's compliance or non-compliance with an applicable federal standard...." Bureau of National Affairs, The Consumer Product Safety Act 12 (editors' analysis); *see also id.* at 66–67.

 In this case, then, if the CPSC had actually adopted an NMIR requirement, it would come into evidence. If the requirement was subsequently revoked, Congress surely contemplated that the "revocation" would also be admissible-i.e., was not a "failure ... to take any action." The sequence of CPSC activities here is not significantly different. The CPSC gathered information, engaged in official consideration of a rulemaking, then ultimately decided for articulated reasons, *see* 49 Fed. Reg. at 31,911, not to go forward, but to withdraw the proposal. These are CPSC actions, not failures to act, and they are indeed pertinent to information available to manufacturers in determining whether they met a relevant standard of care.

 I conclude that section 2074(b) reflects Congress's recognition that the new Commission it had established would be confronting thousands of consumer products, most of which it could not pay any attention

to, at least for a long while. Congress was concerned, therefore, that the creation of the CPSC and its new authority would not impede common law litigation in the states over unsafe products, as subsection (a) directs.[3] The most reasonable reading of section 2074(b), therefore, is that it is referring to the complete failure by the CPSC to engage in activity on a product; that failure is not to be introduced into evidence as somehow implying that a particular product is not unsafe. Where the CPSC has engaged in activity, on the other hand, those activities are admissible even if they lead ultimately to a decision not to regulate, just as an ultimate decision to regulate is admissible under subsection (a). They are not "failure ... to take any action."[4]

Obviously there are some remaining Fed. R. Evid. 403 issues, for many of the CPSC's activities may be only marginally relevant or divert the jury from the central issues in the case, but those can be dealt with on an item-by-item basis.

SO ORDERED.

---

**3.** Subsection (a) and the legislative history I have referred to here also support my earlier conclusion, Order of March 25, 1997, that federal preemption does not apply in this case. That earlier decision was made in the absence of legislative history, but the available history actually supports it.

**4.** There is dictum in one reported case that arguably bears on the issue. In *Butcher v. Robertshaw Controls Co.*, 550 F.Supp. 692, 699 (D.Md. 1981), the court stated:

The statute is obviously aimed at the same concerns that underlie Fed. R. Evid. 407–410, except with a reverse orientation; those evidentiary rules are designed to prevent inferences of guilt or liability being drawn from the performance of specified acts, and § 2074(b) is

designed to prevent inferences of non-culpability or non-liability being drawn from the agency's failure to act.

In *Butcher*, however, the claim apparently was that the manufacturer had violated a CPSC rule requiring it to provide information to the Commission about its product defects; as a result the CPSC did not take any action about the product; as a result of the CPSC inaction the defective product stayed in circulation; and as a final result the plaintiff was injured. The conclusion that section 2074(b) would not prevent admissibility of CPSC inaction in this context (actually, the argument was that it prevented the statement of a claim) thus has very little to do with the issue I am deciding.