*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0228p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DAVID R. CUMMINS, Conservator for C.A.P., a minor,

                       *Plaintiff-Appellant,*

        *v.*

BIC USA, INC. and BIC CONSUMER PRODUCTS MANUFACTURING COMPANY, INC.,

                    *Defendants-Appellees.*

No. 12-5635

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 1:08-cv-00019—Joseph H. McKinley, Jr., Chief District Judge.

Argued: July 25, 2013

Decided and Filed:  August 14, 2013

Before:  KEITH and McKEAGUE, Circuit Judges; WATSON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Joseph H. Mattingly, III, MATTINGLY & NALLY-MARTIN PLLC, Lebanon, Kentucky, for Appellant.  Edward H. Stopher, BOEHL, STOPHER & GRAVES LLP, Louisville, Kentucky, for Appellees. **ON BRIEF:** Joseph H. Mattingly, III, MATTINGLY & NALLY-MARTIN PLLC, Lebanon, Kentucky, for Appellant. Edward H. Stopher, Raymond G. Smith, Todd P. Greer, BOEHL, STOPHER & GRAVES LLP, Louisville, Kentucky, for Appellees.

_____

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

———————————

**OPINION**

———————————

McKEAGUE, Circuit Judge.  This products liability action stems, tragically, from severe burn injuries suffered by a three-year old boy.  After a nine-day trial, the jury returned a verdict for the manufacturer of the cigarette lighter that started the injurious fire.  The jury found the lighter was not defective or unreasonably dangerous in a way that causally contributed to the injuries.  Plaintiff contends on appeal that the trial was unfair because the court (1) allowed inadmissible evidence, and (2) improperly refused to give a jury instruction concerning misconduct by opposing counsel.  Finding no error, we affirm the judgment of the district court.

## I.  BACKGROUND

The minor victim, referred to simply as "CAP," sustained serious burns on December 17, 2004, when he was three years old.  He had just returned to his mother Amy Cowles' home in Greensburg, Kentucky, after an overnight visit with his father and step-mother, Thor and Tammy Polley.  CAP testified in trial that he found a cigarette lighter on the floor in his father's truck (driven by his step-mother) as he returned to his mother's home.  CAP used the lighter to loosen a button on his shirt.  He said he did not know the lighter would cause a flame.  When his shirt caught fire, CAP screamed.  His mother responded to the scream.  She observed CAP in flames from the waist up, attempted to remove the shirt, and poured water over his chest.  She held him until the ambulance arrived and went with him to the hospital.  CAP spent three weeks in the hospital, where he received treatment for second and third degree burns to his face and chest and underwent several skin graft surgeries before being released on January 7, 2005.

A black BIC model J-26 cigarette lighter was found at the scene of the fire and delivered to Greensburg Police Chief John Brady.  The lighter was admitted in evidence at trial, and Chief Brady identified it as the lighter given to him at the scene.  He testified

that the lighter was worn, and the child safety guard had been removed from the lighter when it was given to him.**[1]**   Thor Polley denied that the lighter belonged to him but acknowledged that he usually bought BIC lighters and customarily removed the child-resistant guards from them to make them easier to use.

This action was commenced by David R. Cummins as Conservator for CAP on January 8, 2008 in the Green Circuit Court, Green County, Kentucky.   The complaint set forth claims for compensatory and punitive damages based on various theories under state and federal law.   Named as defendants were BIC USA, Inc., and BIC Consumer Products Manufacturing Company, Inc. (collectively "BIC"), as manufacturer of the lighter.   BIC removed the action to federal court based on the parties' diversity of citizenship.

A jury trial began on January 23, 2012, limited to plaintiff's claims for violation of Kentucky's Consumer Protection Act and violation of the federal Consumer Product Safety Rule.   After nine days of trial, the jury deliberated for two hours before finding (1) that BIC had not knowingly or willfully violated the Consumer Product Safety Rule, 16 C.F.R. § 1210.3(b)(4), in a way that was a substantial factor in causing CAP's injuries; and (2) that the BIC model J-26 lighter was not defective and unreasonably dangerous in a way that was a substantial factor in causing CAP's injuries.

Plaintiff moved for a new trial, contending (1) that the court erred in allowing BIC to introduce evidence of the failure of the Consumer Product Safety Commission to take action concerning the lighter that caused CAP's injuries, in violation of 15 U.S.C. § 2074(b); and (2) that the court erred by permitting BIC's counsel to argue that CAP's parents were to blame for his injuries and refusing to instruct the jury to disregard such arguments.   Plaintiff argued that these two errors combined to mislead the jury and deny

---

**[1]**The testimony as to who found the lighter, and where, is unclear.  Defendants argue that the record evidence is so unclear as to be insufficient to support a finding that the lighter delivered to the Police Chief caused the fire or that BIC manufactured the lighter that caused the fire.  Defendants contend this evidentiary void represents an independent basis for affirming the judgment, rendering harmless any error the court may have made in admitting improper evidence or denying a requested instruction.  Because we hold the district court did not err in either of the challenged rulings, we need not reach defendants' harmless error argument.  For purposes of this appeal, the lighter admitted in evidence is presumed to be the one that caused the fire.

him a fair trial. The district court denied the motion in a one-sentence order.  On appeal, plaintiff challenges this ruling, renewing the same two arguments.

## II.  ANALYSIS

### A. Standard of Review

The district court's denial of plaintiff's motion for new trial is reviewed for abuse of discretion. *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 414 (6th Cir. 2012).  A new trial is appropriate when the jury reaches a "seriously erroneous result as evidenced by (1) the verdict being against the [clear] weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Id.* (quoting *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 405 (6th Cir. 2006)).  An abuse of discretion may be established if the district court is held to have relied on clearly erroneous findings of fact, improperly applied the law, or used an erroneous legal standard. *Mike's Train House*, 472 F.3d at 405.  The district court will be deemed to have abused its discretion only if the reviewing court is left with "a definite and firm conviction that the trial court committed a clear error in judgment." *Id.*

To the extent the motion for new trial was based on an erroneous evidentiary ruling, the evidentiary ruling, too, is evaluated under the abuse-of-discretion standard. *United States v. Morales*, 687 F.3d 697, 701–02 (6th Cir. 2012).  The district court has broad discretion to determine questions of admissibility; an evidentiary ruling is not to be lightly overturned. *Nolan v. Memphis City Schools*, 589 F.3d 257, 265 (6th Cir. 2009).  An erroneous evidentiary ruling amounts to reversible error, justifying a new trial, only if it was not harmless; that is, only if it affected the outcome of the trial. *Morales*, 687 F.3d at 702; *Nolan*, 589 F.3d at 265.

Similarly, to the extent the motion for new trial was based on the court's refusal to give a requested jury instruction, the refusal is reviewed for abuse of discretion. *Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 387 (6th Cir. 2008).  "A district court's refusal to give a jury instruction constitutes reversible error if (1) the omitted instruction

is a correct statement of the law, (2) the instruction is not substantially covered by other delivered charges, and (3) the failure to give the instruction impairs the requesting party's theory of the case." *Id.* (quoting *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 901 (6th Cir. 2004)).

## B. Evidence of CPSC's Failure to Take Action

Plaintiff's theory, in support of both tried claims—that the design of the BIC model J-26 lighter that caused CAP's injuries was in violation of federal law, and was defective and unreasonably dangerous under Kentucky law—is based largely on the contention that the lighter was not in compliance with a federal consumer product safety requirement, 16 C.F.R. § 1210.3(b)(4), because the child resistant guard was too easily removable. The regulation provides in relevant part:

> (b) The mechanism or system of a lighter subject to this part 1210 that makes the product resist successful operation by children must:
>
> . . . .
>
> (4) Not be easily overridden or deactivated.

16 C.F.R. § 1210.3(b). Focusing on this requirement, plaintiff relied on evidence that the design of the child resistant guard on the J-26 lighter had been changed in 2004 from a one-piece guard to a two-piece guard. While plaintiff conceded that the one-piece guard was not easily overridden or deactivated, he contended that the two-piece guard removed from the subject J-26 lighter was too easily removable and did not satisfy § 1210.3(b)(4).

BIC responded with evidence that the Consumer Product Safety Commission had never investigated, expressed concern about, taken any enforcement action with respect to, or found either J-26 model out-of-compliance with, the § 1210.3(b)(4) requirement. This evidence was introduced primarily through the expert testimony of Nicholas Marchica, a product safety consultant who was formerly employed by the Consumer Product Safety Commission ("CPSC") from 1978 to 2005. Anticipating this testimony, plaintiff had made pre-trial motions in limine, asking the district court to exclude

Marchica's testimony about inaction by the CPSC as barred by federal law. The motions were based in relevant part on 15 U.S.C. § 2074(b), which provides:

> The failure of the [Consumer Product Safety] Commission to take any action or commence a proceeding with respect to the safety of a consumer product shall not be admissible in evidence in litigation at common law or under state statutory law relating to such consumer product.

15 U.S.C. § 2074(b).

The district court denied the motions in limine, relying on *Morales v. American Honda Motor Co.*, 151 F.3d 500 (6th Cir. 1998). In *Morales*, we construed § 2074(b) as only barring evidence that the CPSC had "*completely* failed to act, as opposed to those instances where the CPSC engaged in activity that ultimately led to a decision not to regulate." *Id.* at 513 (emphasis in original). The district court was satisfied that Marchica's anticipated testimony would include evidence that the CPSC had examined and tested samples of the BIC J-26 and declined to initiate an investigative action or recall because it concluded that the BIC J-26 complied with § 1210.3. Because the evidence BIC would introduce was in the nature of activity leading to a decision not to regulate, rather than a complete failure to act, the court deemed the evidence not barred by § 2074(b). The court recognized that the challenged evidence of the CPSC's failure to take enforcement action with respect to the BIC J-26 lighter would not be conclusive of liability but would be relevant and not inadmissible.

Accordingly, the motions in limine were denied, and Marchica was allowed to testify at trial. In relevant part, his testimony included the following points:

> – that the child safety standard for cigarette lighters, 16 C.F.R. § 1210.3, had been in effect since 1994;
>
> – that BIC first obtained "qualification" from the CPSC for the J-26 lighter in 1995;
>
> – that there is no published set of specific criteria defining the § 1210.3(b)(4) term, "easily overridden or deactivated";

– that the CPSC was aware in June 1999 (after examining a J-26 lighter used by a two-and-a-half-year old to start a fire in Minnesota) that the child resistant guard could be removed from the lighter, but that the CPSC did not undertake an investigation and analysis of the ease of its removability;

– that the CPSC had, in February 2001 and February 2002, collected two sets of BIC model J-26 samples for protocol testing;

– that CPSC compliance officials had toured a BIC production facility in the 2002–04 time frame to inquire about quality assurance;

– that the CPSC had broad authority to investigate any product safety problem that came to its attention;

– that the CPSC had issued "dozens upon dozens" of recalls of disposable cigarette lighters that lacked required child resistant safety features;

– that the CPSC had never questioned the design of the child resistant guard on the J-26 and no such recall or request for replacement had ever been issued to BIC;

– that the CPSC had, in May 2006, (1) acknowledged receipt of BIC's report of 2004 child-safety test results concerning the two-piece child resistant guard    design change in the J-26 lighter; and (2) confirmed that BIC had complied with the reporting requirements;

– that the CPSC's May 23, 2006 letter states that it does not constitute CPSC "approval of the lighters or of the reports," but the letter allows BIC to continue to import J-26 lighters for distribution and sale in the U.S., as long as they fully comply with applicable safety regulations; and

– that the May 23, 2006 letter indicates the new information on the BIC J-26 lighter would be added to the CPSC's list of "qualified" lighters (i.e., lighters as to which manufacturers and importers have submitted complete documentation), and that the BIC J-26 remained on the list as of the last time Marchica had consulted it, in 2010.

In relevant part, then, Marchica's testimony established that the J-26 lighter was not unknown to the CPSC and that the CPSC had had occasion to qualify the J-26 and evaluate different aspects of it.  His testimony established that the CPSC had not completely failed to act in relation to the J-26; that the CPSC had taken some actions in relation to the J-26; that the CPSC had not found the J-26 to be in violation of any safety

rule; and that the CPSC had not exercised its authority to recall J-26 lighters or taken any other enforcement action in relation to the J-26. His testimony was thus allowed notwithstanding 15 U.S.C. § 2074(b).

In connection with both of plaintiff's claims (i.e., for knowing or willful violation of a federal consumer product safety rule, and for design and manufacture of a defective and unreasonably dangerous product under state law), the district court instructed the jury on the significance of Marchica's testimony. In substance, the court advised the jury that the fact that the CPSC had never cited BIC for violating the Consumer Product Safety rules was not necessarily determinative; that it was a factor to be considered, but was not conclusive.

Aggrieved by the jury's adverse verdict, plaintiff moved for a new trial. Plaintiff's argument is encapsulated in one sentence:

> Thus, the evidence at trial was uncontradicted that ***at no time*** prior to BIC's manufacture of the two-piece lighter used by CAP or even prior to CAP's injury had the CPSC even considered the two-piece design in any fashion, let alone any specific consideration of whether the child-resistant feature of the BIC model J-26 two-piece lighter is "easily deactivated or overridden" in violation of 16 CFR § 1210.3(b)(4).

R. 188-1, Memorandum at 5, Page ID # 4193 (emphasis in original). Focusing on the specific alleged defect at the heart of the instant claims, and the evidence of the CPSC's complete failure to take any action specifically with respect to the ease with which the two-piece child resistant guard on the J-26 can be deactivated or overridden, plaintiff argued to the district court and argues on appeal that *Morales* is distinguishable and that Marchica's testimony should have been excluded.

There is little case law interpreting 15 U.S.C. § 2074(b). The *Morales* decision is the most authoritative ruling. In *Morales*, the trial court was deemed to have erred when it applied § 2074(b) "with wooden literalness" to exclude evidence of a CPSC report explaining why the CPSC denied a petition to regulate motorbikes. *Morales*, 151 F.3d at 512. The court held the report "was not evidence of the CPSC's inaction;

rather, it was evidence of the CPSC's *action* in denying the rule-making petition." *Id.* at 513 (emphasis in original).

In so ruling, the *Morales* court followed the lead of *Johnston v. Deere & Co.*, 967 F. Supp. 578 (D. Me. 1997). In *Johnston*, too, the CPSC declined to act after having initially issued notice of proposed rulemaking to regulate operation of riding lawn tractors. In *Johnston*, like *Morales*, the evidence scrutinized under § 2074(b) consisted of the CPSC's "articulated reasons" for withdrawing the proposed rulemaking and deciding not to regulate. *Id.* at 580. The court explained why such evidence was not inadmissible under § 2074:

> [S]ection 2074(b) reflects Congress's recognition that the new Commission it had established would be confronting thousands of consumer products, most of which it could not pay any attention to, at least for a long while. Congress was concerned, therefore, that the creation of the CPSC and its new authority would not impede common law litigation in the states over unsafe products, as subsection (a) directs. The most reasonable reading of section 2074(b), therefore, is that it is referring to the complete failure by the CPSC to engage in activity on a product; that failure is not to be introduced into evidence as somehow implying that a particular product is not unsafe. Where the CPSC has engaged in activity, on the other hand, those activities are admissible even if they lead ultimately to a decision not to regulate, just as an ultimate decision to regulate is admissible under subsection (a). They are not "failure . . . to take any action."

*Johnston*, 967 F. Supp. at 580 (footnotes omitted).[2] This construction was cited with approval in *Morales*.

Plaintiff concedes that the standards discussed in *Morales* and *Johnston* are applicable but contends the instant facts are distinguishable. That is, plaintiff acknowledges that evidence of CPSC *activity* in relation to a product is admissible but maintains that evidence of *inaction* by the CPSC is not admissible. In both *Morales* and *Johnston*, the evidence deemed admissible despite § 2074(b) was evidence of

---

[2]Subsection (a) of § 2074 provides: "Compliance with consumer product safety rules or other rules or orders under this chapter shall not relieve any person from liability at common law or under State statutory law to any other person." 15 U.S.C. § 2074(a).

activity—the CPSC's report in *Morales* and the CPSC's "articulated reasons" in *Johnston*—in relation to the subject product's specific alleged defect. Here, in contrast, plaintiff contends that BIC's evidence of CPSC's involvement with the two-piece guard on the J-26 lighter, specifically, amounted only to inaction and should not have been admitted.

BIC notes in response that Congress, in § 2074(b), made inadmissible evidence of the CPSC's failure to act "with respect to the safety of a consumer product." Consistent with this language, BIC contends, *Morales* and *Johnston* construed § 2074(b) as barring evidence of the CPSC's inaction only where there has been a *complete* failure to engage in activity on "a product." The CPSC has not completely failed to act in relation to the J-26 lighter; rather, it has promulgated numerous regulations, including regulations governing the child resistant guard. *See* 16 C.F.R. § 1210. Because the CPSC has not completely failed to act in relation to the J-26 lighter, BIC contends that § 2074(b), as construed in *Morales*, does not to bar Marchica's testimony on the CPSC's failure to expressly determine the suitability of the two-piece guard. In other words, in view of the CPSC's substantial activity in regulating the J-26 lighter, BIC maintains the evidence that no enforcement action has ever been instituted regarding a particular feature of the product, the child resistant guard, is probative and was properly admitted.

Indeed, BIC's position and the district court's ruling are consistent with the teaching of *Morales* and *Johnston*. Plaintiff maintains, however, that *Morales* and *Johnston* are factually distinguishable. He argues that Marchica's testimony, unlike the evidence allowed in *Morales* and *Johnston*, did not refer to a report or statement of reasons explaining the CPSC's decision not to take action specifically in relation to the two-piece guard. Yet, § 2074(b), as construed in *Morales* and *Johnston*, does not establish such a specific precondition to admissibility. The "standard" established in *Morales* and *Johnston*, which plaintiff concedes is applicable, recognizes that § 2074(b) is intended "to exclude those instances where the CPSC had completely failed to act, as opposed to those instances where the CPSC engaged in activity that ultimately led to a decision not to regulate." *Morales*, 151 F.3d at 513 (quoting *Johnston*, 967 F. Supp. at

580).  The evidence introduced by BIC cannot be fairly characterized as a complete failure by the CPSC to engage in any activity on the safety of the product, the J-26 lighter.  And although the evidence does not amount to a report or statement of reasons for deciding not to regulate, it is fairly characterized as evidence of "CPSC activity that led to a decision not to regulate."

Accordingly, we conclude the district court did not abuse its discretion by allowing Marchica to testify concerning the CPSC's activity in relation to the J-26 lighter and its undisputed failure to take any enforcement action in relation to the J-26 lighter and the one-piece or two-piece child resistant guard.  The court's application of § 2074(b) was faithful to the governing teaching of *Morales*.

Plaintiff argues that because Marchica's testimony falls short of establishing that the CPSC ever passed specifically on the ease with which the two-piece guard could be deactivated or overridden, it does not necessarily justify an inference that the two-piece guard was approved or was safe.  This is true.  In fact, the evidence of CPSC's most recent activity on the J-26 lighter, the May 23, 2006 letter, clearly states that it is not to be considered "an approval" of the lighter.  But the question the district court was asked to decide was *admissibility* under § 2074(b).  The court was not asked to assess the probative value or weight of the evidence, or the nature and strength of any inference that might reasonably be drawn from it.  Such matters were properly left for argument by counsel for the parties and determination by the jury.  Indeed, plaintiff's counsel cross-examined Marchica, highlighting the weaknesses in his testimony and undermining its impact.  Counsel also argued the significance of the evidence to the jury.  And the district court clearly instructed the jury that the CPSC's failure to cite BIC for violating product safety rules was merely a factor to be considered and not determinative in relation to either of plaintiff's claims.[3]

---

[3]Section 2074(b), the only asserted grounds for excluding Marchica's testimony, excludes evidence only in relation to state law claims.  It does not exclude evidence in relation to a claim under federal law, such as plaintiff's first claim, for knowing or willful violation of a federal consumer product safety rule.

Marchica's testimony regarding the CPSC's inaction was relevant and admissible in relation to plaintiff's federal claim, to show BIC did not knowingly or willfully violate 16 C.F.R. § 1210.3(b)(4).  It follows that outright exclusion of the evidence from trial under § 2074(b) was never a proper option.

Thus, in ruling on the admissibility of the evidence, the district court used the correct legal standard. The court is not shown to have committed a clear error in applying it. Nor has plaintiff shown that admission of the evidence—the accuracy of which is not contested—contributed to a "seriously erroneous result." It follows that the district court did not abuse its discretion in denying the motion for new trial.

## C. Refusal to Give Curative Instruction

Plaintiff also contends the trial court erred when it refused to give the jury a curative instruction following BIC's counsel's repeated improper suggestions that CAP's parents were to blame for his injuries. In a pre-trial ruling on one of plaintiff's motions in limine, the district court had ruled that the fault of others was not relevant to the question whether the child resistant guard on the J-26 lighter could be easily deactivated or overridden. The court directed BIC's counsel to make sure that his interrogation and/or argument did not cast blame on others. Plaintiff contends BIC's counsel, Edward Stopher, repeatedly violated this directive during trial.

None of the alleged transgressions was flagrant.[4] Yet, at the close of proofs, plaintiff's counsel asked the court for an instruction admonishing the jury not to consider the fault of any person other than BIC. The court denied the request. The court explained that the fact that "somebody" removed the child resistant guard from the lighter was relevant, "but who it was that removed it was not necessarily relevant." R.

---

Rather, even if § 2074(b) were deemed to have barred some of Marchica's testimony in relation to the claim under Kentucky law, the most plaintiff could have hoped for was a limiting instruction—a limiting instruction only slightly more limiting than the instruction that *was* given—advising the jury that they could consider the evidence of the CPSC's inaction only in relation to the claim under federal law and not at all regarding the state law claim.

Considering the limited relief § 2074(b) *could* have afforded, the likelihood that the district court's failure to give such a slightly more limiting instruction, even *if* erroneous, contributed to a "seriously erroneous result" warranting a new trial, is negligible.

[4]Plaintiff identifies several instances where he says Mr. Stopher transgressed the court's directive in his opening statement and questioning of Amy Cowles. First, Stopher mentioned that the accident would not have occurred unless CAP had been alone at the time. Second, Stopher alluded to Thor Polley's deposition testimony that he customarily removed the safety guards from his lighters. Third, Stopher elicited testimony from Amy Cowles that she failed to discover that CAP had something in his pocket when he returned from visiting his father. Obviously, none of these instances involved a direct "casting of blame on others." Each represents an allusion to the undisputed facts and circumstances that contributed to cause the tragic accident. None of these instances represents a violation of the court's directive, much less the sort of flagrant misconduct that could be expected to unfairly influence the jury in its deliberations.

210, Trial tr. vol. VIII at 145-46, Page ID # 6086-87. The court ruled it was not inappropriate for BIC's counsel to bring out the former point; as to the latter point, the court observed that BIC's counsel had been successfully kept from "demonizing Thor Polley or Amy [Cowles]." *Id.*

Then, during closing argument, Mr. Stopher made the misstep that is the focus of plaintiff's present claim. Plaintiff contends that Stopher "castigated" CAP's father in the following remarks:

> Presumably, if this was the lighter, presumably that lighter was disabled by Thor Polley. He made an intentional adult choice to disable that lighter. And by his testimony, he disabled it not because it is easy to deactivate it or override it, he disabled it because he said it made it easier to light.
>
> It is undisputed that no one can make a fool-proof lighter. No one based on the evidence that we have heard can make a Thor-proof lighter. With this intent—

R. 212, Trial tr. vol. IX at 21, Page ID # 6145. At this point, the district court interrupted Stopher and admonished him for implying Polley was the "fool" who "presumably" removed the guard. The court then turned to the jurors and advised them to disregard Stopher's reference to Polley:

> Ladies and gentlemen, I have in this trial cautioned Mr. Stopher many times not to try to demonize the parents in this accident. An issue in this case is whether or not somebody removed this. We don't know who did it. It doesn't really matter who did it. The fact that matters most to you is that somebody did it.

*Id.* at 22, Page ID # 6146. Plaintiff's counsel was not satisfied with this admonition. At the end of closing arguments, counsel renewed his request for an "additional instruction on the jury not being able to blame other parties." *Id.* at 81, Page ID # 6205. Again, the district court denied the request.

It is this refusal that plaintiff now contends was an abuse of discretion so grievous as to warrant a new trial. That is, even though the district court took the unusual measure of *sua sponte* interrupting Mr. Stopher's closing argument mid-

sentence, admonishing him in the presence of the jury, and directing the jury to disregard the offending reference, plaintiff contends the court's failure to repeat the admonition in the final jury instructions was reversible error.

Granted, implying that CAP's father was "foolish" for presumably removing the child resistant guard from the lighter that presumably caused the fire was unnecessary and inappropriate. Stopher's argument—to the effect that a lighter manufacturer simply cannot design a lighter that is functional and safe and defies modification by an adult who wishes to disable a safety mechanism— could have been made more discreetly than it was. But Stopher's various comments were neither inaccurate nor inflammatory. And Stopher was duly chastened for his indiscretion by the district court—abruptly and directly. In fact, the district court's sudden interruption of counsel's argument mid-stream, to scold him in a sidebar and contemporaneously admonish the jury to disregard the inappropriate remark, was arguably more effective than a reiteration of the standard final instruction that lawyers' arguments are not evidence.

Considering the elements plaintiff must meet to merit a new trial based on the court's refusal to give a requested jury instruction, plaintiff's argument falls short. Yes, (1) the district could have given the requested instruction as a correct statement; but (2) the instruction appears to have been substantially and adequately covered by the court's contemporaneous curative admonishment and instruction; and (3) counsel's misconduct was not so grievous that the refusal to give the instruction could reasonably be deemed to have materially prejudiced plaintiff's theory of the case. *See Taylor*, 517 F.3d at 387. The district court's refusal to give the requested instruction was not, therefore, an abuse of discretion. It follows that the district court's denial of plaintiff's motion for new trial on this ground was also not an abuse of discretion.

## III.  CONCLUSION

Neither of the asserted claims of error presents grounds for disturbing the judgment. Accordingly, the district court's denial of plaintiff's motion for new trial is upheld and the judgment in favor of BIC is **AFFIRMED**.