NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0228n.06

Case No. 23-5203

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JEREMIAH ALLSOPP, | ) | **FILED**<br>May 31, 2024<br>KELLY L. STEPHENS, Clerk |
| Plaintiff – Appellant, | ) |  |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED<br>STATES DISTRICT COURT FOR<br>THE EASTERN DISTRICT OF<br>TENNESSEE |
|  | ) |  |
| CODY FOUST, | ) |  |
| Defendant – Appellee. | ) |  |
|  | ) | OPINION |
|  | ) |  |

Before: SILER, COLE, and MATHIS, Circuit Judges.

**SILER, Circuit Judge.** Jeremiah Allsopp sued Coffee County corrections officer Cody Foust under 42 U.S.C. § 1983, alleging that Foust used excessive force against him during an altercation.[1] The jury reached a verdict in favor of Foust. After trial, Allsopp unsuccessfully moved for judgment as a matter of law on the issue of liability, and for a new trial based on liability, admission of his jail classification sheet at trial, and comments made during the defense's closing arguments. Allsopp appeals the denial of that motion, and we affirm.

**I.**

While awaiting trial, Allsopp, who was held as a high-risk inmate in the maximum security "BB pod" at Coffee County jail, got into a heated verbal argument with another inmate. Officer Young, a corrections officer at the jail, intervened to separate the two men. As Officer Young

---

[1] Allsopp also sued Coffee County, and the district court granted summary judgment in favor of the County. However, Allsopp dropped his appeal against the County in a motion on November 2, 2023, electing to proceed on appeal solely against Foust.

separated them, Allsopp swatted away Officer Young's hand and said, "don't touch me." Officer Foust, seeing this, responded. How he responded forms the center of the parties' dispute.

According to Allsopp, Foust violently grabbed Allsopp by the neck, lifted him off the ground and slammed him into a wall. Foust allegedly then began choking Allsopp, causing Allsopp to twist Foust's hand so as to break Foust's grip. This caused Foust pain, and Foust then "slammed [Allsopp] to the floor and continued to choke him until he blacked out." Inmates Edward Worthy and Kyle Wallace testified similarly. Wallace's testimony broadly corroborated Allsopp's testimony, with the exception that he did not claim Foust lifted Allsopp off the ground by his neck. Worthy's testimony was also corroborative, except that he claimed Foust choked Allsopp *before* throwing him to the ground.

The defense testimony painted a very different story. Four corrections officers, including Foust, testified. Officer Perez testified that Foust saw Allsopp swat Young's hand away and intervened to admonish Allsopp, saying, "do not swat my officers." He then stated that Allsopp grabbed Foust's hand, whereupon Foust and Young "took him down to the floor." Officer Bennett testified that when Young separated the arguing inmates, Allsopp "smack[ed]" Young's hand away twice, whereupon Foust intervened. Foust told Allsopp not to touch his officers, and Allsopp swore at Foust. Bennett then testified that Allsopp used some kind of martial arts move on Foust, creating danger for the outnumbered officers and requiring that Allsopp be taken to the floor and handcuffed. However, on cross-examination he appeared to concede that Foust touched Allsopp first. Officer Young testified that after Allsopp swatted away Young's hand, Foust walked into the room and grabbed Allsopp and threw him against the wall.

Foust testified that when he directed Allsopp not to touch his officers, Allsopp cursed back and continued yelling. "Foust told Allsopp to back up but he refused" and took a step forward.

Foust interpreted this as a threat and placed Allsopp against the wall to handcuff him. Allsopp was able to break Foust's hold and cause him to cry out in pain, whereupon Foust took him to the ground and handcuffed him.

Prior to trial, Allsopp moved in limine to exclude any evidence of his twenty-four prior felony convictions. He argued that they were unfairly prejudicial under Rule of Evidence 403 because of their sexual nature, and that they were also not admissible as Rule 609 impeachment evidence because they were not crimes of deceit. The district court granted his motion in part, excluding any evidence "of the specific nature of [Allsopp's] felonies" but allowing evidence of "the fact that [he] has been convicted of twenty-four felonies."

At trial, defendants admitted Allsopp's jail Classification Sheet, which listed the type of crime for which he was then detained, a summary of his criminal history, and the jail's assessment of his level of dangerousness. The sheet was redacted to show only that he was convicted of an "Assaultive Felony"; there was no mention of the sexual nature of his prior crimes. Allsopp unsuccessfully objected, and the court noted that it did not admit the document as character evidence to show that "Allsopp had an assaultive character," but rather to show why he had been placed into the highest security area of the jail, and why Defendants reacted the way they did to the altercation.

While cross-examining Officer Bennett, Allsopp's attorney referenced Bennett's PTSD from combat service in the United States Marine Corps. Bennett's memory and mental capacity were potentially at issue, and there was some question about whether Bennett had been terminated from his job at the jail because of memory issues. Defense counsel objected, and the district court overruled the objection. On re-direct, defense counsel attempted to ask Bennett if he thought it

was "fair" for Allsopp's attorney to ask about his military injuries and if he "appreciated being asked [the] question," but the district court sustained Allsopp's objections to both questions.

Defense counsel referenced this exchange during closing arguments, asking the jury to recall that moment when, as "thanks for" his testimony, Bennet was "grilled . . . about his military experience." Counsel asked the jury to, when "considering the credibility of the people who are in front of you, and especially the person who is asking you for money damages, [consider] why do you go after a war veteran?" Allsopp's attorney objected, but the court overruled the objection, suggesting to defense counsel, "why don't you move along."

Defense counsel also referenced two elements of Allsopp's character in closing: his status as a felony offender, and his alleged failure to abide by prison rules. First, counsel cautioned the jury that "if you even give the plaintiff in this case so much as a nickel or a dime, you would be giving that to a plaintiff with 24 or 25 felony convictions." Allsopp's attorney objected and was overruled. Defense counsel also cautioned the jury that they "would be entering a judgment in favor of a plaintiff who violated by his own admission the cardinal rule inside a jail of don't touch the corrections officers . . . so don't give him as much as a nickel or a dime." Allsopp's attorney did not object to this second statement.

At the close of the evidence, both parties moved for judgment as a matter of law and were denied. After the jury returned a verdict in favor of Foust, Allsopp moved for judgment as a matter of law and a new trial pursuant to Federal Rules of Civil Procedure 50(b) and 59(a). The district court denied both motions and this appeal followed.

## II.

On appeal, Allsopp raises the same arguments he made before the district court. Specifically, he argues that he should have been granted judgment as a matter of law under Rule

50(b), and, in the alternative, that he should have been granted a new trial under Rule 59. He then argues that admission of the classification sheet violated the court's own order and the Rules of Evidence, that defense counsel's closing argument invited the jury to decide the case on impermissible grounds, and that both these errors demand a new trial.

**A.**

When, as here, the motion for judgment as a matter of law is renewed after the jury's verdict, we may allow the verdict to stand, order a new trial, or enter judgment for the moving party. Fed. R. Civ. P. 50(b). To prevail on his unreasonable force claim, Allsopp was required to show by a preponderance of the evidence that the use of force was not objectively reasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Reasonableness is based on the facts known at the time through the eyes of a responding officer, not a retroactive judgment from the clarity of the present. *Id*. The factors we consider when determining reasonableness are, among others: (1) the relationship between the altercation and the amount of force used, (2) Allsopp's injuries, (3) Foust's efforts to "temper or to limit" the force, (4) the security risk at the time, (5) "the threat reasonably perceived by" Foust, and (6) Allsopp's resistance. *Id*. (outlining a non-exhaustive list of possible factors).

Allsopp argues that judgment in his favor is justified because, "by virtually everyone's account," he "was not assaulting anyone but was just arguing." He claims that "he simply acted verbally upset, and then took a single step toward Foust." Because, in his view, "[c]ussing and yelling" is not a security threat and, somewhat incredibly, "stepping toward someone . . . is a natural, even respectful thing to do" and that it is "doubtful" that such a movement "could *ever* count as resistance," he argues that Foust's use of force was entirely unjustified.

5

But this is not the only conclusion the jury could have reached. *See* Fed. R. Civ. P. 50(a) (authorizing entry of judgment when no "reasonable jury would [] have a legally sufficient evidentiary basis to find for the party on that issue"). On the contrary, viewing the evidence in the light most favorable to Foust, it becomes clear that the jury was justified in concluding that Allsopp presented a credible threat to corrections officers and "was prepared to escalate the conflict."

On the day of the incident, officers intervened in a loud argument during inmates' one hour of daily exercise time. Allsopp had apparently removed his rosary beads and the other inmate removed his glasses in preparation for a fight. Officer Young intervened in this tense scene and was met with Allsopp's swatting or slapping away Young's hand "one or two times in an angry, defiant manner." When Foust intervened to reprimand Allsopp, Allsopp, according to witnesses, said "fuck that," and took a step toward Foust. Taken in the context of a heated altercation between high-risk inmates in a dangerous area of the jail and in front of greatly outnumbered officers, it is hard to imagine this step forward as being the respectful gesture that Allsopp argues it could have been. Instead, it represents continued belligerence. As the district court noted, "Allsopp's response indicated defiance, and created in Officer Foust a concern that Allsopp presented a continued threat to the safety and security of the corrections officers and the other inmates." A reasonable jury could easily conclude that Allsopp presented a threat, and that placing him against a wall to restrain and handcuff him was reasonable given the circumstances, fulfilling the first *Kingsley* factor. *Kingsley*, 576 U.S. at 397.

Moving to the second *Kingsley* factor, the evidence is inconclusive that Allsopp suffered any injuries from the altercation. *Id.* Allsopp insisted that he suffered from neck pain and impaired mobility because of the confrontation. And at least one of his witnesses testified that he complained of pain. However, corrections officers testified that all inmates are observed,

particularly after an incident, and that Allsopp manifested no impaired movement and did not appear to modify his behavior. Jail medical staff who examined Allsopp noted that there were no physical manifestations of injury besides some mild arthritis and unexplained neck spasms. There was sufficient evidence for the jury to conclude that Allsopp was feigning his shoulder injury and that any issues complained of were not caused by the altercation with Foust.

Foust also applied force commensurate with the threat—in other words, there was ample evidence for the jury to believe that he "temper[ed] or . . . limit[ed] the amount of force" he used. *Id*. The weight of the evidence showed that Foust used accepted best practices to restrain Allsopp during the incident, despite Allsopp's resistance. In contrast to Allsopp's and the other prisoners' testimony that Foust swept in from the sidelines, grabbed him by the throat, and lifted him clear of the ground to slam his head into a neighboring wall, most of the testimony reasonably paints a different picture for the jury: Foust pushed Allsopp against a wall to mitigate the threat he presented to other officers and detain him with minimal risk to everyone present. While it was likely not an enjoyable or comfortable experience, the response was not disproportionate to the situation. Instead, it was "an effective way for a corrections officer—vastly outnumbered by the inmates—to maintain control over an unruly inmate without the assistance of other corrections officers."

Foust subsequently pushed Allsopp to the floor to detain him. This too was reasonable considering Allsopp's resistance to Foust's attempts to handcuff him. Numerous witnesses testified that Allsopp executed some kind of "martial arts move" on Foust while against the wall, causing Foust to cry out in pain. A jury could easily conclude that taking the struggle to the floor was entirely reasonable in light of the situation at the time. Therefore, the third and sixth *Kingsley* factors are satisfied. *Id*.

The jury heard significant evidence about the potential risk involved in the BB pod at Coffee County jail and how outnumbered corrections officers were. As the district court noted, the BB pod housed "the most dangerous inmates," including Allsopp, who, as his Classification Sheet noted, was being held for an "assaultive felony." The unit had an officer-to-inmate ratio of approximately 3 to 200, making it very dangerous if inmates got the "upper hand" in an altercation. Corrections officers work under the real threat that inmates, if they gain an advantage, could obtain nonlethal weapons such as tasers and pepper spray from officers' belts and use them to incapacitate the guards. Even items as innocuous as an ink pen, or as minor as a handcuff key or pair of handcuffs represent a threat in the hands of inmates. This is precisely why inmates are not allowed to touch officers. These facts cut in favor of Foust on the fourth and fifth *Kingsley* factors. *Id.*

In summary, there was ample evidence for the jury to conclude that Foust's actions were justified in light of Allsopp's actions, the circumstances, and the setting. Allsopp therefore falls far short of the Rule 50(b) standard for judgment as a matter of law, and the court's decision to allow judgment on the verdict was justified. *See* Fed. R. Civ. P. 50(b)(1). We find no error in the district court's decision to deny both his motion for judgment in his favor and for a new trial on Rule 50 grounds.

**B.**

Allsopp moved in the alternative for a new trial under Rule 59 on three grounds, including on the grounds of liability cited in his Rule 50(b) motion. He asserts that Rule 59 requires that he receive a new trial because (1) the jury's verdict was against the weight of the evidence, (2) the court admitted prejudicial evidence against him, and (3) the defense attorney's closing statement prejudiced the jury.

A new trial is justified under Rule 59 "when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir. 1996) (quotations omitted). As with review of a Rule 50(b) motion, we do not evaluate the credibility of witnesses or substitute our own judgment for that of the jury; instead, if the jury's decision is reasonable, the verdict stands. *Woodbridge v. Dahlberg*, 954 F.2d 1231, 1234 (6th Cir. 1992). We review denial of a Rule 59 motion for abuse of discretion. *Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 880 F.3d 791, 798-99 (6th Cir. 2018).

**1.**

Allsopp's argument in support of Rule 59 relief essentially mirrors his argument for judgment as a matter of law under Rule 50. And as with that argument, it is wrong. The jury's verdict is supported by substantial evidence.

**2.**

Allsopp complains that his jail classification sheet should not have been admitted into evidence, and that its admission prejudiced him before the jury for two reasons: First, because it violated the district court's order partially granting his motion in limine to exclude evidence of his felony convictions, and second, because its characterization of his prior convictions as "assaultive" violated the Rules of Evidence as too prejudicial. Neither argument has merit.

Allsopp brings his argument under the third scenario for granting a new trial under Rule 59: that of unfairness. *Holmes*, 78 F.3d at 1045–46. He argues that because the jury was allowed to see that his prior convictions were "Assaultive Felonies," they were left with two possible conclusions: either he had been convicted of multiple "violent altercations" or had been convicted

of sexually deviant acts against minors. Because the first assumption is false and the second is true but highly prejudicial, he claims that the trial was unfair.

We review a district court's evidentiary ruling for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141–42 (1997). The district court abuses its discretion when we are left with the "definite and firm conviction that the court below committed a clear error of judgment." *Bryant v. McDonough*, 72 F.4th 149, 152 (6th Cir. 2023) (citations omitted). "An erroneous evidentiary ruling amounts to reversible error, justifying a new trial, only if it was not harmless; that is, only if it affected the outcome of the trial." *Cummins v. BIC USA, Inc.*, 727 F.3d 506, 510 (6th Cir. 2013) (citing *United States v. Morales*, 687 F.3d 697, 701–02 (6th Cir. 2012)). The error must have affected a party's "substantial rights." Fed. R. Civ. P. 61.

*Violation of the court's order*. Allsopp argues that the district court allowed the defense to violate the district court's own order partially granting his motion in limine by admitting the classification sheet. He raised this issue with the district court in his motion for a new trial and was denied.

The district court's order on Allsopp's Rule 59 motion effectively dispatched this theory. The court noted that the original order on the motion in limine acknowledged the highly prejudicial nature of Allsopp's prior sexual convictions, stating that "sex offenses and, in particular, sex offenses with a minor are regarded by our society in general as especially shocking, heinous crimes." And while any felony conviction "has probative value bearing on a witness' credibility," these crimes "do not involve an element of dishonesty." The fact that they are "heavy with prejudice" caused the court to conclude that "admission of the nature of [Allsopp's] convictions" would "suggest a decision . . . based on improper considerations." Therefore, the court allowed only information about the bare fact that Allsopp had twenty-four felonies. The court's rationale

10

centered on the sexual nature of his prior offenses, and that context meant that only the sexual nature of the crimes was excluded. Therefore, admission of the redacted classification showing Allsopp's crimes as "assaultive" did not violate the court's prior order.

*The prejudicial nature of the word "assaultive."* Allsopp argues that even if admission of the classification sheet did not violate the court's order on his motion in limine, the word "assaultive" invited the jury to speculate on the nature of his prior offenses in ways that prejudiced him. This, he claims, violates the provisions concerning prejudicial evidence in Rules 403 and 404, and the character evidence prohibition of Rule 609.

As the district court noted in its order, this is not true. The court admitted the classification sheet for two reasons: to explain why Allsopp was housed in the maximum-security pod at the jail, and to show that Foust "had good reason to take immediate action" when Allsopp defied him. And, as the defendant points out, the fact that Allsopp was dangerous and had potentially committed serious crimes would have been evident to the jury anyway by virtue of the fact that he was in the maximum security pod at the Coffee County jail.

Admission of the classification sheet as impeachment evidence does not leave us with the "definite and firm conviction" that the district court "committed a clear error of judgment." *Bryant*, 72 F.4th at 152. Allsopp's motion was therefore properly denied as to his evidentiary claim.

**3.**

Finally, Allsopp argues that three statements made by the defense attorney in his closing argument were improper because they invited the jury to decide the case on impermissible grounds. The defense attorney asked the jury not to award damages because Allsopp (1) questioned Bennett about his service-related PTSD injuries, (2) was a felon, and (3) did not obey jail rules. We do not

believe that these statements clear the high bar for reversal based on allegedly improper closing arguments.

Attorneys are given wide latitude in how to present their case, particularly in closing arguments. "[C]losing argument serves to sharpen and clarify the issues for resolution by the trier of fact," something that is only possible at the end of proceedings when all evidence has been presented. *Herring v. New York*, 422 U.S. 853, 862 (1975). Then, counsel respectively addresses the jury and "argue[s] the inferences to be drawn" and "point[s] out the weaknesses of their adversaries' positions." *Id*. In our adversarial system, this is the pinnacle of the trial, and as the Supreme Court noted, "no aspect of [] advocacy could be more important." *Id*. Latitude here is essential to the role of an attorney. *See Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (per curiam) (noting that the "broad range of legitimate defense strategy" necessarily requires latitude in closing arguments).

In light of this, Allsopp "must meet a high standard to obtain a new trial on the grounds of improper statements by opposing counsel." *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 589 (6th Cir. 2015). The remedy he seeks is "sparingly exercised on appeal," and involves significant deference to the trial court. *Id*. (quoting *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980)). This deference stems from the realities of the judicial system, particularly the trial court's significant "discretion in determining whether an objectionable [statement] is so prejudicial as to require a retrial," and our concomitant reluctance to question such a decision based on a "cold record." *City of Cleveland*, 624 F.2d at 756; *see also Balsley v. LFP, Inc.*, 691 F.3d 747, 761–62 (6th Cir. 2012).

Allsopp must then clear a second hurdle: proving that "there is a reasonable probability that the verdict of the jury has been influenced" by the statements. *CFE Racing Prods., Inc.*, 793

F.3d at 590 (quotations omitted). Thus, it is insufficient to simply show that the statements were improper; he must show that they violated counsel's duty not to "introduce extraneous matters before [the] jury or, by questions or remarks, endeavor to bring before it unrelated subjects" and that such a breach was reasonably likely to have influenced the final verdict. *City of Cleveland*, 624 F.2d at 756 (quotations omitted). We hold that Allsopp failed to bear his burden.

*Questioning a military veteran.* Allsopp's attorney asked Bennett on cross-examination about his service-related PTSD injuries and his termination from employment at the jail. The attorney did so in an effort to impeach Bennett's memory of events. Defense counsel objected and was overruled. During closing, defense counsel asked the jury to recall that moment when, as "thanks for" his testimony, Bennett was "grilled . . . about his military experience." Counsel asked the jury to, when "considering the credibility of the people who are in front of you, and especially the person who is asking you for money damages, [consider] why do you go after a war veteran?"

In addressing this objection on Allsopp's original motion for a new trial, the district court acknowledged that it would have been wrong for defense counsel to "suggest to the jury that Allsopp's counsel's arguments should be discounted because his questioning could be deemed critical of a war veteran" but concluded that the issue was "not significant enough" to be a problem. We agree. Although extensive comments along these lines would have been problematic, this issue was quickly addressed during cross-examination, and again during closing arguments, when the trial judge urged defense counsel to "move along." This is hardly the kind of pervasive misconduct which warrants a conclusion on our part that the verdict was likely affected.

*Awarding damages to a felon.* Second, Allsopp objects to defense counsel's comments that any money damages awarded to Allsopp would be awarded to a convicted felon. Specifically, counsel stated, "Ladies and gentlemen, if you even give the plaintiff in this case so much as a

13

nickel or a dime, you would be giving that to a plaintiff with 24 or 25 felony convictions." Allsopp's attorney objected and was overruled.

The district court, in denying the Rule 59 motion, noted that when "observing [counsel's] closing argument in real time" it thought that counsel "was simply reminding the jurors of evidence that had actually been presented to them during the trial." And while it conceded that "[i]n retrospect, [defense counsel] came extremely close to crossing an impermissible line[,]" counsel's comments did not actually cross that line.

We agree. Because there was no video footage, this case rested entirely on witness testimony. It is therefore reasonable, justifiable, and entirely predictable that defense counsel would point to Allsopp's criminal convictions as probative of his truthfulness. Few witnesses agreed in all respects, and Allsopp's testimony was the most extreme in its allegations. Defense counsel was therefore entirely within his rights to draw the jury's attention to Allsopp's untrustworthiness as a way of bolstering his own case and witnesses.

*Awarding damages to a rule-breaker.* Finally, Allsopp objects to defense counsel's comments about prison rules. During closing, counsel told the jury that if they awarded damages, then "you would be entering a judgment in favor of a plaintiff who violated . . . the cardinal rule inside a jail of don't touch the corrections officers . . . so don't give him as much as a nickel or a dime." This comment occurred very shortly after the comment about awarding a felon, and Allsopp's counsel did not object. The district court noted that even if he had, the objections would have been overruled.

As the district court noted in its order denying Allsopp's Rule 59 motion, defense counsel made these comments in the broader context of contesting Allsopp's characterization of his own actions as nonthreatening. In response, defense counsel highlighted for the jury the inherent

danger that corrections officers worked under, how outnumbered they were, and the "cardinal jail rule" that inmates do not touch the officers. While counsel's statement, taken alone, certainly could appear to invite the jury to return a verdict against Allsopp simply because he broke jail rules, the broader context and Allsopp's failure to object at the time the comment was made counsel against reversal. The district court's refusal to grant a new trial was not an error.[2]

Finally, taken in the aggregate, these three comments do not amount to prejudicial conduct sufficient to meet the high bar Allsopp faces here. Counsel's first two comments were mitigated by the court's admonitions or justified by Allsopp's argumentation and the nature of the case, and the final statement, made without objection, is similarly benign. *See CFE Racing Prods., Inc.,* 793 F.3d at 590 ("[F]ailure to object 'raise[s] the degree of prejudice which must be demonstrated' in order for this Court to grant the request for a new trial." (second alteration in original) (quoting *Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998)).

The judgment is AFFIRMED.

---

[2] Our conclusion is further bolstered by the district court's inclusion of a jury instruction explicitly informing jurors that "[t]he lawyers' statements and arguments are not evidence."