NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0714n.06

Case No. 20-5105

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JESSICA JONES, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| DAVID WISEMAN, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | **OPINION** |
| | ) | |

**FILED**
Dec 22, 2020
DEBORAH S. HUNT, Clerk

BEFORE: CLAY, GIBBONS, and NALBANDIAN, Circuit Judges.

**NALBANDIAN**, Circuit Judge. While Jessica Jones was driving, she collided with a commercial semi-trailer driven by David Wiseman. She sued.

At Wiseman's deposition, Jones questioned him about his obligations as a commercial driver under the Federal Motor Carrier Safety Regulations (FMCSRs). Wiseman then moved in limine requesting that Jones be prohibited from referring to the FMCSRs at trial because 1) she had not identified any FMCSR as a basis for negligence per se and 2) the FMCSRs were irrelevant because they did not establish the governing standard of care. Jones filed her own motion in limine specifying four FMCSRs that she asserted applied and requesting that the court permit discussion of them at trial. At a pretrial hearing, the district court granted Wiseman's motion and denied Jones's. The court reaffirmed its decision post-trial.

On appeal, Jones argues that the district court abused its discretion by excluding the FMCSRs. And because the jury assigned equal fault to both parties, she asserts that this alleged

error affected the trial's outcome. She asks us to remand for a new trial. But given the broad discretion afforded to district judges in making evidentiary decisions, we **AFFIRM**.

I.

In 2017, Jessica Jones was driving her Hyundai Veracruz in Memphis, Tennessee, when she collided with a commercial semi-trailer driven by David Wiseman. Jones then sued Wiseman, alleging that Wiseman struck her while attempting a right turn from the left lane. Because Wiseman was driving a commercial motor vehicle (CMV), he was subject to Federal Motor Carrier Safety Regulations (FMCSRs) at the time of the collision.

At Wiseman's deposition, Jones's counsel questioned Wiseman about his obligations under the FMCSRs and his status as a professional driver. Before trial, Wiseman moved in limine requesting that Jones be prohibited from referring to the FMCSRs at trial because 1) she had failed to identify any FMCSR as a basis for negligence per se and 2) the FMCSRs were irrelevant since they did not establish the governing standard of care. Jones did not respond, and the district court issued an order granting Wiseman's motion because "[i]nviting the jury to decide liability" because Wiseman was "aware of and familiar with the FMCSRs" would be asking the jury to apply "a general heightened duty of care to the broader public" and would therefore be an "attempt to inflame the jury's passions and incite them to render a verdict on an improper basis" in violation of rule 403. (R. 138, PageID 1495-96.) But in that same order, the district court stated that it would "entertain a separate motion in limine and, if necessary, [would] conduct a hearing outside the presence of the jury to determine the admissibility of questions, testimony or argument concerning an applicable FMCSR, if one is shown to exist." (*Id.* at 1496.)

The day after the court issued its order, Jones filed her own motion in limine requesting that the court permit discussion of the FMCSRs at trial and specifying four "applicable"

regulations: 49 C.F.R. § 383.110 (requiring commercial drivers to have knowledge and skills need

for safe operation), 49 C.F.R. § 383.111 (general areas of knowledge required, including "the

importance of proper visual search"), 49 C.F.R. § 383.131 (addressing test manuals for commercial

operators), and 49 C.F.R. § 390.11 (requiring motor carriers to require compliance with FMCSRs).

(R. 147, PageID 1614.)  In her motion, she connected the regulations with Mississippi's state

commercial driver test manual by explaining that under the FMCSRs, states must provide a Federal

Motor Carrier Safety Administration (FMCSA) pre-approved driver information manual to

commercial driver's license applicants.  She cited Mississippi's manual because Wiseman had a

Mississippi commercial driver's license.  And she asserted that Wiseman's "violation of the

FMCSRs" in "improperly performing turning maneuvers" was "demonstrated by his failure to

follow the proper procedures" laid out in Mississippi's manual because state manuals "must

include . . . [t]he substance of the knowledge and skills that drivers must have as outlined" in the

FMCSRs.  (*Id.* at 1616 (quoting 49 C.F.R.§ 383.131(a)(iv)).)  That manual states:

> If you are driving a truck or bus that cannot make the right turn without swinging into another lane, turn wide as you complete the turn.  Keep the rear of your vehicle close to the curb.  This will stop other drivers from passing you on the right.  Don't turn wide to the left as you start the turn.  A following driver may think you are turning left and try to pass you on the right.  You may crash into the other vehicle as you complete your turn.

MISSISSIPPI PROFESSIONAL DRIVER'S MANUAL, 2.7.6, https://driving-tests.org/wp-content/uploads/2014/10/MS_CDL-Drivers-Manual.pdf.  And she argued that Wiseman's failure

to comply with this provision meant that he had violated FMCSR § 383.11(a)(4)(iv).

But Jones's motion did not ask the district court to rule that the Mississippi manual was

admissible.  Rather, she simply requested that the court allow "question, argument, and/or

testimony involving the Federal Motor Carrier Safety Regulations at trial."  (R. 147, PageID 1618.)

Despite having already issued an order granting Wiseman's motion, the district court reconsidered the FMCSR issue at a hearing on the competing motions, construing Jones's motion as a response to Wiseman's. And although neither Wiseman's nor Jones's motion specifically requested that the court admit or exclude the Mississippi manual at trial, both parties referenced the manual and the regulations at the hearing.

With the benefit of Jones's response to Wiseman's motion, the district court denied Jones's motion and again granted Wiseman's motion. But its reasons for doing so differed from those described in the initial ruling on Wiseman's motion. Unlike its initial order, which excluded the FMCSRs on grounds of unfair prejudice, the court's oral ruling excluded them because 1) Jones did not raise the FMCSRs in her amended complaint, 2) the FMCSRs do not establish the standard of care, and 3) introducing the regulations would be more confusing to the jury than helpful.

The court's statement of its ruling on the motions only addressed the regulations. (R. 179, PageID 2986 ("Obviously the Plaintiff is still allowed to ask the questions about, you know, how one makes a right turn in a truck. But referencing the regulations themselves, I think, will only add to the confusion of the jury.").) But the hearing transcript reveals that the district judge viewed the issue of the admissibility of the manual as the same as the admissibility of the regulations themselves. For example, after the court decided the motions and in response to Jones's attorney's question about whether he could use the manual to impeach Wiseman if Wiseman opened the door by suggesting he had been trained in a different way, the district judge stated, "that strikes me as fair." (*Id.* at 2987.)

The parties tried the case, and with no evidence of the regulations or the Mississippi manual, the jury found that Wiseman and Jones were equally at fault for the accident. Because Tennessee's comparative fault doctrine prevents recovery unless the defendant is more at fault

4

than the plaintiff, *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992), the district court dismissed Jones's claims. Jones later filed a renewed motion for judgment as a matter of law or, alternatively, a new trial. The judge denied her motion. She appealed. And she now argues that she is entitled to a new trial because the district erred in excluding the FMCSRs at trial.

II.

"The district court's denial of [a] plaintiff's motion for new trial is reviewed for abuse of discretion." *Cummins v. BIC USA, Inc.*, 727 F.3d 506, 509 (6th Cir. 2013). "To the extent the motion for new trial was based on an erroneous evidentiary ruling, the evidentiary ruling, too, is evaluated under the abuse-of-discretion standard." *Id.*; *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997) ("[A]buse of discretion is the proper standard of review of a district court's evidentiary rulings."). Because "[t]he district court has broad discretion to determine questions of admissibility; an evidentiary ruling is not to be lightly overturned." *Cummins*, 727 F.3d at 510. A court abuses its discretion only if we are left with a "definite and firm conviction that the trial court has committed a clear error of judgment." *United States v. Thompson*, 501 F. App'x 347, 363 (6th Cir. 2012) (citation omitted). And "[a]n erroneous evidentiary ruling amounts to reversible error, justifying a new trial, only if it was not harmless; that is, only if it affected the outcome of the trial." *Cummins*, 727 F.3d at 510.

III.

Jones's brief[1] argues that the trial court improperly excluded evidence of the four federal regulations because that evidence was both relevant under Federal Rule of Evidence 401 and admissible under rule 403. And she asserts that the error prejudiced the outcome of her trial. So our task here is simple: We must determine whether the district court abused its discretion in

---

[1] Jones only filed an opening brief.

excluding discussion of those regulations and, if it was an abuse of discretion, whether the error prejudiced Jones. But before we do so, we first explain the scope of the arguments that are properly before us to decide this case because of some disparity between Jones's arguments in her brief and those she made below and at oral argument. We then proceed to the merits, analyzing exclusion of the regulations under rules 401 and 403 and concluding that the district court did not abuse its discretion.

A.

In her brief, Jones argues that the district court erred in excluding evidence of four federal regulations. But she does not spend much time describing those regulations or explaining how she would have used them at trial. Rather, she describes them each briefly and parenthetically in her background section. She then later asserts that the regulations "[w]ere relevant and admissible because they provide instruction on how to safely maneuver and drive a large commercial vehicle." (Appellant Br. at 11.) And she briefly describes the substance of the regulations in two sentences: "The FMCSRs set safety and operation standards for companies and individuals operating trucks, vans, buses, and other commercial motor vehicles involved in interested commerce. The FMCSRs also require commercial drivers to receive specific training on how to safely make wide turns." (*Id.* at 14.) But she fails to explain how FMCSR safety standards related to this case. She fails to explain how she would have used the regulations at trial. And she fails to describe the training required under the regulations. Her cursory discussion of the regulations and her failure to explain how she would have used the regulations at trial leave this panel without much more than a factual description of this case, citations to four regulations, and assertions that those regulations were relevant and admissible.

Oral argument and a review of the record, however, reveals that there could have been more to Jones's argument than her sparse brief sets forth. In district court, when Jones identified the four allegedly relevant FMCSRs and asked the court for permission to discuss them, she argued that there was an important interplay between the regulations and a manual that Mississippi provides to CDL applicants under the regulations (Wiseman was driving with a Mississippi CDL). And she claimed that Wiseman's failure to comply with the FMCSRs in the way he made the turn involved in the accident was "demonstrated by his failure to follow the proper procedures" in Mississippi's manual, which explained how to make turns like the one in this case. (R. 147, PageID 1616.) At a hearing on both motions, Jones further explained why she believed the regulations should come in. And as in her memorandum supporting her motion, she again emphasized the relationship between the regulations and the Mississippi manual:

> To be specific about what we want to do, the Federal Motor Carrier Safety Regulations in 383.131 require that states must [provide] FMCSR pre-approved driver information manual, and the manual must include substance of the knowledge and skills that drivers must have.
>
> So that's the FMCSR part that we'd like to get in. That he had an obligation to receive this testing manual. That he received his license in Mississippi and that the manual that he studied and was tested on had a rule about properly making a right-hand turn . . . .

(R. 179, PageID 2984.) So her argument appears to have been that the regulations were relevant and admissible because they could support her reliance on the Mississippi manual whose instructions Wiseman had allegedly violated. But both her motion and Wiseman's motion only asked for the inclusion or exclusion of evidence of the regulations, not the manual itself.

That said, at the hearing on their motions, the parties and the district court seemed to treat the manual as if it fell within the scope of their motions at least to a certain extent. After deciding that "referencing the regulations themselves" would "only add to the confusion of the jury" and

7

excluding such references, the trial judge then noted that the manual could come in for impeachment purposes if Wiseman somehow opened the door. (*Id.* at 2987.) But the manual, of course, is not an FMCSR. So the district court seems to have been incorrectly assuming that the manual was included within the scope of its ruling and the parties motions. And neither the regulations nor the manual came in at trial.

Despite her arguments below, Jones never even mentions the Mississippi manual in her brief. The closest she gets is when she parenthetically notes that 49 C.F.R. § 383.131 "addresses test manuals for commercial motor vehicle operators," and when she asserted that "the FMCSRs also require commercial drivers to receive specific training on how to safely make wide turns." (Appellant Br. at 7, 9.) But the manual argument resurfaced at oral argument. And so we must now decide whether we can and should consider the manual at all in disposing of this case.

To begin with, the manual itself is not the subject of this appeal. The issue before us is whether the district court abused its discretion "in excluding any mention of the FMCSRs." (*Id.* at 6; Appellee Br. at 2.) And the Mississippi manual is not a federal regulation. Furthermore, if the district court and the parties incorrectly assumed that the manual itself fell within the scope of the FMCSRs below, Jones's brief does not assert that this mistake was reversible error—it doesn't even mention the manual at all. Thus we need not address whether the district court erroneously excluded the manual itself.

Rather, we must decide whether to address Jones's unbriefed argument that the manual's relationship to the regulations should color our review of whether excluding the regulations was an abuse of discretion. As this court has explained, a party "forfeits an argument by . . . failing to make it in its opening appellate brief, or identifying it without pressing it." *Berkshire v. Beauvais*, 928 F.3d 520, 530 (6th Cir. 2019) (quoting *United States v. White*, 920 F.3d 1109, 1122–23 n.4

(6th Cir. 2019) (Clay, J., concurring in part and dissenting in part)). Because Jones's opening brief fails to even reference the manual, she has forfeited the argument that the interplay between the standards in the manual and the regulations should color our analysis. The closest she comes to making that argument is when her brief notes that the regulations address state manuals and asserts, without citation, that the regulations require training on how to safely make wide turns. That is not enough. And so we decline to consider Jones's unbriefed argument that the relationship between the manual and the regulations should impact our review. We simply review the case that Jones presented in her brief—citations to four regulations, brief descriptions of the FMCSRs, and a description of the factual background of her case.

B.

Jones's first argument on appeal is that the district court erroneously concluded that the regulations were irrelevant and accordingly excluded them. Although the district court did not explicitly state that the FMCSRs were irrelevant, it suggested that they were when it excluded them because Jones had identified no rule that would impose a heightened standard of care. (R. 179, PageID 2986 ("It doesn't establish the standard of care. It has more to do with what states— what the, I guess, Feds require the states to do in their manuals for the issuing of licenses.").) And Wiseman argues that we should affirm on relevance grounds because the FMCSRs do not set the standard of care.

The parties appear to be speaking past each other on this issue. Both agree that Tennessee law, rather than the FMCSRs, sets the standard of care that governs this case. But they disagree about whether that renders the FMCSRs irrelevant.

The bar for relevance is low under Federal Rule of Evidence 401. That rule states that "[e]vidence is relevant if: (a) it has *any tendency* to make a fact more or less probable than it would

be without the evidence; and (b) the fact is of consequence in determining the action." Fed R. Evid. 401 (emphasis added).

Tennessee statutory law provides that "every driver of a vehicle shall exercise due care by operating the vehicle at a safe speed, by maintaining a safe lookout, by keeping the vehicle under proper control and by devoting full time and attention to operating the vehicle, *under the existing circumstances* as necessary in order to . . . see and avoid colliding with any other vehicle[s]." Tenn. Code § 55-8-136 (emphasis added). And, though Jones fails to cite any Tennessee cases on this issue, we note that regulatory or statutory evidence that falls short of establishing the standard of care may still be relevant as some evidence of negligence under Tennessee law. *See Gross v. Nashville Gas Co.*, 608 S.W.2d 860, 869 (Tenn. Ct. App. 1980) (quoting a trial court's statement that "the mere existence of a safety rule doesn't mean its negligent to violate a safety rule" but that the violation could still "be considered . . . in determining whether or not such a violation would be a negligent act . . . under the circumstances" before upholding admission of the rules and noting that "[t]here is Tennessee case law to support the conclusion that where one is aware of rules or regulations, such rules are admissible under the theory that one's conduct might have been, or should have been, influenced by them"); *Brown v. Mercer-Defriese*, No. E2015-00755-COA-R3-CV, 2016 WL 286456, at *4 (Tenn. Ct. App. Jan. 25, 2016) ("Generally speaking, an allegedly dangerous or defective condition's compliance with a regulatory code is relevant and often probative, but not conclusive, on the question of the defendant's negligence."); *City of Elizabethton v. Sluder*, 534 S.W.2d 115, 117 (Tenn. 1976) ("Compliance with (the Code) is not conclusive on the question of the degree of care owed by the defendant, but is to be considered by you, together with other circumstances . . . .").

Jones identifies federal regulations that broadly describe the "knowledge and skills" that the Federal Motor Carrier Safety Administration has determined are "necessary to operate a CMV safely," 49 C.F.R. § 383.110, and state that CMV drivers "must have knowledge of . . . [t]he importance of proper visual search, and proper visual search methods, including: (i) Seeing ahead and to the sides; (ii) Use of mirrors; and (iii) Seeing to the rear." 49 C.F.R. § 383.111(a). The regulations also explain that states "must provide an FMCSA pre-approved driver information manual to" CDL applicants. 49 C.F.R. § 383.131. And they require motor carriers to require observance of the FMCSRs. 49 C.F.R. § 390.11.

These regulations may not supplant the Tennessee standard of care (due care under the circumstances), but they do support the common-sense proposition that CMV drivers like Wiseman need skills and knowledge that differ from those needed to drive other vehicles—they require the "knowledge and skills . . . necessary to operate *a CMV* safely." 49 C.F.R. § 383.110 (emphasis added). They also support the notion that there are proper ways for CMV operators to keep themselves aware of their surroundings. And they show that CMV operators must learn about these standards both through state pre-approved manuals and through the requirement that motor carriers require observance of the regulations. Because Tenn. Code § 55-8-136 takes circumstances into account in defining "due care" in each case, these regulations have at least "some tendency" to show that ordinary care when driving a CMV may differ from ordinary care in operating a different type of vehicle. And they also have at least "some tendency" to show that Wiseman should have known this. The question of what ordinary care requires under the circumstances of this case is also "of consequence." That is all that is required to be relevant under rule 401. So if the district court's decision to exclude discussion of the FMCSRs stemmed from the conclusion that the FMCSRs were completely irrelevant, it erred.

11

C.

But even assuming relevance here, that alone cannot show that the district court erred in excluding the regulations. Under Federal Rule of Evidence 403, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly cumulative evidence." The relevance bar is a low one—"any tendency to make a" material "fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. And while rule 403 places a thumb on the scale in favor of admission of relevant evidence by requiring that the probative value of the evidence be substantially outweighed a listed danger, the rule ultimately calls for a weighing. And the upshot is that evidence that is only slightly probative is more susceptible to exclusion under rule 403.

Here, the probative value of the evidence is minimal. The regulations support the common-sense conclusion that CMV drivers may need skills and knowledge that differ from those required for driving other vehicles. They show that, in general, there are proper ways for CMV operators to keep themselves aware of what is happening around them—"proper visual search methods." And they show that Wiseman should have been aware of the regulations and the broad-based skills and knowledge contemplated by them. But the regulations identified do not tell us what a specific driver like Wiseman should have done under the circumstances of this case. Indeed, the regulations cited by Wiseman themselves provide that the "[t]he *substance* of the knowledge and skills that drivers must have as outlined" in the FMCRSs is found in state manuals rather than the regulations themselves. 49 C.F.R.§ 383.131(a)(iv). So we are simply left with regulations that provide general indicia that CMV drivers should know how to operate their vehicles safely and have the skills requisite to do so. This evidence supports Jones's contention that ordinary care in

operating a CMV differs from the care required to operate smaller vehicles. But its probative value is minimal with no standards against which the jurors could have measured Wiseman's actions. Simply stated, the regulations do not tell us whether Wiseman did anything wrong at all. While the regulations are not wholly irrelevant for the reasons explained above, their probative value is minimal. It is simply common sense that people driving CMVs will need the skills and knowledge necessary to safely operate those vehicles rather than the skill and knowledge required to drive passenger vehicles.

On the other side of the scale, the danger of "confusing the issues" and "misleading the jury" is substantial here. There is a very fine and potentially confusing distinction between the use of statutory or regulatory standards to set the standard of care (negligence per se) and resort to those standards to simply measure the reasonableness of one's actions under the standard of care (some evidence of negligence). Tennessee cases have suggested that the latter use of statutes or regulations may be proper. *See Gross*, 608 S.W.2d at 869. But still introduction of the FMCSRs may have entailed a substantial danger of leaving the jury confused about whether the standard was ordinary care or something else given federal regulation of CMV operators. Indeed, it appears as if Wiseman failed to appreciate this nuanced distinction in making his arguments on appeal by focusing on whether the regulations impose the standard of care despite Jones's concession that ordinary care under Tenn. Code § 55-8-136 applies. So we find it impossible to fault the district judge for concluding that the regulations would "be more confusing to the jury than helpful to them." (R. 179, Page ID 2986.) And given the slight probative value of the evidence it is equally difficult to gainsay the district court's ultimate decision that the regulations should not come in because of the potentially confusing nature of the evidence.

And Jones fails to present any viable reason to second guess the basis for the district court's decision—that the FMCSRs would be more confusing than helpful. Rather, Jones's 403 argument mainly responds to the basis of district court's initial ruling on Wiseman's motion—unfair prejudice. Indeed, the closest her brief comes to addressing the district court's determination that evidence of the regulations would be more confusing than helpful is when she alleges that the FMCSRs would not "unfairly prejudice Defendant, confuse the issues or mislead the jury," and then claims that "[q]uestioning Defendant about the FMCSRs would not lead a jury to impose a heightened standard of care" because it would simply "help the jury in determining what was reasonable . . . under the specific circumstances." (Appellant Br. at 15.) But even this argument arguably relates more to unfair prejudice—alteration of the standard of care—than to the danger of confusion. And regardless, this is a far cry from a meaningful argument explaining why the district court was wrong to conclude the FMCSRs would be more confusing than helpful. So if the district court erred, Jones has not told us why.

Our decision to uphold the district court's ruling is also buttressed by the broad deference district courts have when deciding evidentiary questions like this one. *See Cummins*, 727 F.3d at 510. A district court's "evidentiary ruling [should] not to be lightly overturned." *Id.* And so we review evidentiary determinations for abuse of discretion. A district court abuses its discretion only if we are left with a "definite and firm conviction that the trial court has committed a clear error of judgment." *United States v. Thompson*, 501 F. App'x 347, 363 (6th Cir. 2012) (citation omitted). We are not left with that conviction here given Jones's failure to make a compelling argument showing why the evidence she desired to proffer was more helpful than confusing and the fact that the regulations simply do not tell us what a driver like Wiseman should have done in a case like this one.

IV.

Under our case law, "[a]n erroneous evidentiary ruling amounts to reversible error, justifying a new trial, only if . . . it affected the outcome of the trial." *Cummins*, 727 F.3d at 510. But we need not determine whether exclusion of the FMCSRs impacted the outcome below because the district court did not abuse its discretion in excluding them. We therefore **AFFIRM** the district court's denial of Jones's motion for new trial.

**CLAY, Circuit Judge, dissenting.** The district court's improper exclusion of relevant evidence regarding the Federal Motor Carrier Safety Regulations ("FMCSRs"), in combination with Tennessee's modified comparative fault system, likely changed the outcome of the trial by precluding Plaintiff Jessica Jones from recovering. The district court's ruling was erroneous because this evidence was both relevant and critical to Jones' theory of the case that Defendant David Wiseman was not using reasonable care when driving a commercial motor vehicle ("CMV"), leading him to crash into Plaintiff's vehicle. The district court's error altered the course of the trial, causing the jury to find Jones and Wiseman equally at fault for the accident; consequently, Plaintiff was barred from recovering *any* damages under Tennessee's modified comparative fault system. Had Plaintiff been able to present evidence at trial related to the FMCSRs, Plaintiff would likely have been able to convince the jury that Wiseman was more at fault for the accident than Jones—by at least one percentage point, if not more—given that the evidence would have gone directly to Wiseman's failure to meet the standard of care.

In the accident at issue, Defendant was driving a semi-trailer in Memphis, Tennessee, down a busy avenue in the right lane around 9:00 AM. When he reached the stop light, he moved his vehicle towards the left lane in order to make a right turn, leaving part of the trailer in the right lane to block a vehicle from coming up next to him. Once the light turned green, Defendant checked for oncoming traffic and proceeded to make a right turn. Despite having checked for cars to his right, Defendant did not see Jones' 2009 Hyundai Veracruz in the right lane, and, as a result, his trailer collided with her vehicle, hitting her front left wheel.

When due consideration is given to the facts of the collision in this case, and for the reasons detailed above and below, the district court abused its discretion by excluding evidence of the

16

FMCSRs, and a new trial was warranted because the district court's evidentiary ruling affected the trial's outcome.

First, the district court erred when it excluded evidence of the FMCSRs on the basis that they were not relevant because they failed to impose a heightened standard of care on Wiseman. Federal Rule of Evidence 401 does not set a high bar for determining when evidence is relevant. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). Jones' contention that the FMCSRs were relevant regarding whether Defendant was using reasonable care during the accident because they "informed the manner in which he drove as a professional truck driver" far surpasses the threshold for admissible evidence. (Appellant Br. at 15.)

Both parties agree that Tennessee law provides the applicable standard of care. A Tennessee statute provides the following standard of care for drivers of motor vehicles:

> [E]very driver of a vehicle shall exercise due care by operating the vehicle at a safe speed, by maintaining a safe lookout, by keeping the vehicle under proper control and by devoting full time and attention to operating the vehicle, under the existing circumstances as necessary in order to be able to see and to avoid endangering life, limb or property and to see and avoid colliding with any other vehicle . . . .

Tenn. Code Ann. § 55-8-136(b). As noted by Tennessee state courts and embedded in this provision, "[b]oth common sense and the Tennessee Code create an obligation on the part of drivers of automobiles to exercise due care." *Hickman v. Jordan*, 87 S.W.3d 496, 499 (Tenn. Ct. App. 2001). And due care considers what a reasonable person would do given the existing circumstances. *Doe v. Linder Constr. Co*, 845 S.W.2d 173, 178 (Tenn. 1992) ("Ordinary, or reasonable, care is to be estimated by the risk entailed through probable dangers attending the particular situation and is to be commensurate with the risk of injury."). In the present case, those

circumstances include the knowledge that Defendant had regarding how to safely drive a CMV, as discussed by the FMCSRs. *See* 49 C.F.R. § 383.111 (requiring that CMV operators have knowledge in 20 general areas including "[p]rocedures for safe vehicle operations," "[p]roper use of the motor vehicle's safety system," and the "importance of a proper visual search"). The majority correctly notes that Tennessee state courts have found regulatory and statutory provisions that do not themselves provide a standard of care as relevant to determining whether there was negligence in a given case. *See Gross v. Nashville Gas Co.*, 608 S.W.2d 860, 869 (Tenn. Ct. App. 1980) (noting that where safety rules do not establish the standard of care but are "introduced merely as some evidence, or as a circumstance, relevant to the issue of appellants' own contributory negligence . . . [t]here is Tennessee case law to support the conclusion that such rules are admissible under the theory that one's conduct might have been, or should have been, influenced by them.").

Defendant's argument that the FMCSRs bear no relevance to this case because they "do not aid in setting the standard of care" incorrectly assumes, as the district court did, that the FMCSRs are only relevant if they impose an applicable heightened standard of care. (Appellee Br. at 21.) The fact that the FMCSRs do not provide a heightened standard of care only precludes Plaintiff from pursuing a negligence *per se* claim—in which Defendant would be held liable for violating one of the FMCSRs. It does not render the FMCSRs entirely irrelevant for purposes of determining whether Defendant was negligent under Tennessee law. For example, in *Malburg v. Grate*, the district court denied a similar motion in limine to exclude evidence and expert testimony relating to the FMCSRs. No. 11-14856, 2014 WL 4473786, at *4 (E.D. Mich. Sept. 9, 2014). The court noted that while such evidence would be "irrelevant and inadmissible to prove negligence *per se* based upon an alleged violation of a particular FMCSR," the defendant's "knowledge of the

18

FMCSRs, and his alleged failure to apply that knowledge in the circumstances of this case" was "relevant to the issue of negligence." *Id.* Similarly, in *Espinal v. Wright*, the district court, in dismissing the plaintiff's negligence *per se* claim based on the FMCSRs, noted that the defendant's "supposed failure to apply those [areas of knowledge from 49 C.F.R. § 383.111] will, of course, be relevant to the jury's determination on the ultimate issue of Wright's negligence." No. 3:09–CV–861, 2012 WL 864783, at *3 n.1 (W.D. Ky. Mar. 13, 2012). In this case, as in *Malburg* and *Espinal*, evidence of Defendant's knowledge of the FMCSRs was relevant to the jury's determination of Defendant's negligence based on his failure to comply with the requirements of the FMCSRs for CMV drivers in connection with the accident at issue.

Defendant's citations to *Parks v. Daily Express, Inc.*, 719 F. Supp. 2d 894 (E.D. Tenn. 2010), and *Woulard v. Greenwood Motor Lines, Inc.*, No. 1:17cv231-HSO-JCG, 2019 WL 3318467, at *1 (S.D. Miss. Feb. 4, 2019), do not compel a different conclusion. In *Parks*, the district court determined, as the district court did in the present case, that Tennessee law provided the applicable standard of care and rejected the plaintiff's expert report because it was based *solely* on the standards provided by manuals for CMV drivers and contained minimal references to the FMCSRs or state regulations. 719 F. Supp. 2d at 899 (emphasis added). In *Woulard*, the district court excluded evidence and testimony related to third-party safety guidelines, including the FMCSRs, but provided the plaintiff with the opportunity to "demonstrate[] outside the presence of the jury how any such guidelines are relevant and would be admissible under the Federal Rules of Evidence." 2019 WL 3318467, at *3. In neither of these cases was evidence of the FMCSRs deemed irrelevant to the determination of negligence. Ultimately, evidence of the FMCSRs was relevant because Defendant's knowledge of the FMCSRs was part of the prevailing circumstances for the jury to consider in determining whether Defendant was negligent.

Next, the district court abused its discretion in excluding the FMCSR evidence by under-weighing the probative value of the FMCSR evidence and focusing erroneously on misplaced concerns regarding the danger of confusing the issues and misleading the jury. A district court "may exclude relevant evidence if its probative value is *substantially* outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). We have previously indicated that "district courts have broad discretion in deciding issues of admissibility under Rule 403." *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1154 (6th Cir. 1988). But in deciding whether evidence is admissible under Rule 403, the district court must view the evidence "in a light most favorable to the proponent, maximizing its probative value and minimizing its prejudicial effect" in order to determine whether the evidence has an "undue tendency to suggest a decision on an improper basis." *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991).

Looking at the evidence in the light most favorable to Plaintiff, the FMCSRs had significant probative value in informing the jury about the areas in which CMV drivers are required to be knowledgeable in order to safely operate their vehicles, including areas specifically relevant to the claim in this case that Defendant was negligent in making a right turn. 49 U.S.C. § 383.111 (noting that CMV drivers must be knowledgeable in "[t]he proper procedures for performing various basic maneuvers, including . . . [t]urning the vehicle, e.g., basic rules, off tracking, right/left turns and right curves" and "[t]he importance of a proper visual search, and proper visual search methods, including: (i) Seeing ahead and to the sides; (ii) Use of mirrors; and (iii) Seeing to the rear"). The majority contends that the probative value of the FMCSRs is minimal because they provide "no standards against which the jurors could have measured Wiseman's actions." (Majority Op. at 13.)

But this argument is at odds with the contention that Tennessee state law, and not the FMCSRs, provided the appropriate standard against which to judge Wiseman's actions. The FMCSRs do not lack probative value simply because they in and of themselves do not tell the jury whether Defendant was negligent. And the fact that the jury could surmise the applicability of these general areas of knowledge for CMV drivers through common sense does not diminish the probative value of evidence provided by authoritative regulations. Making such knowledge available to the jury was warranted given the particular risks associated with driving huge CMVs.

Additionally, the probative value of the FMCSRs was not substantially outweighed by a danger of confusing the issues or misleading the jury. As the majority itself states, the FMCSRs do not provide standards of care by which to measure Defendant's actions, making it unlikely that the jury would be confused as to whether to apply the standard of care under Tenn. Code Ann. § 55-8-136 or the areas of knowledge listed under the FMCSRs for CMV drivers. Further, the district court specifically instructed the jury that Tennessee law provided the relevant standard of care, noting that "[u]nder Tennessee law, each driver has a duty to drive with reasonable care, considering the hazards of weather, road, traffic and other conditions." (R. 174, Jury Instructions at PageID # 2900.) It is not uncommon for juries to be asked to apply complicated statutory provisions or multiple principles of law in deciding a case. And the district court could have easily provided a limiting instruction to the jury on how the FMCSRs were relevant to Defendant's knowledge regarding safely driving a CMV, while emphasizing that they did not provide a heightened standard of care, in order to alleviate any concern as to jury confusion. *See United States v. LaVictor*, 848 F.3d 428, 448 (6th Cir. 2017) (finding that the probative value of testimony from three victims on incidents of physical abuse by the defendant was not outweighed by its prejudicial impact or was needlessly cumulative, and noting that "a limiting instruction was given

21

informing the jury on the proper use of the evidence, which ameliorated the risk of unfair prejudice").

Finally, given that the district court abused its discretion in excluding evidence at trial of the FMCSRs, the district court also erred in denying Plaintiff's motion for a new trial because the exclusion of the FMCSR evidence very likely affected the outcome of the trial. Under Federal Rule of Civil Procedure 59, a district court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). We have found that a new trial is warranted "when the jury reaches a 'seriously erroneous result as evidenced by (1) the verdict being against the [clear] weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias.'" *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 414 (6th Cir. 2012) (alteration in original) (quoting *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 405 (6th Cir. 2006)).

In determining whether a new trial is appropriate based on the erroneous exclusion of evidence, we have previously held that "[e]ven if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the evidence would have caused a different outcome at trial." *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 514 (6th Cir. 1998); *Cummins v. BIC USA, Inc.*, 727 F.3d 506, 510 (6th Cir. 2013) ("An erroneous evidentiary ruling amounts to reversible error, justifying a new trial, only if it was not harmless; that is, only if it affected the outcome of the trial."). The party seeking a new trial bears the burden of demonstrating that he or she "suffered prejudice" as a result of the improper exclusion of evidence. *Tompkin v. Phillip Morris USA, Inc.*, 362 F.3d 882, 891 (6th Cir. 2004).

In the present case, evidence of the FMCSRs could well have led to a different outcome given Tennessee's comparative fault system. Tennessee has adopted a modified comparative fault system, allowing plaintiffs to recover damages so long as they are less negligent than the defendant. *See McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992) ("We therefore hold that so long as a plaintiff's negligence remains less than the defendant's negligence the plaintiff may recover; in such a case, plaintiff's damages are to be reduced in proportion to the percentage of the total negligence attributable to the plaintiff."). At trial, the jury found Jones and Wiseman to be equally at fault for the accident, precluding Jones from recovering damages by a single percentage point. Had Jones been able to present relevant evidence of the FMCSRs at trial, this evidence likely would have been sufficient for the jury to shift the distribution of fault the one percentage point necessary for Jones to recover. And while "an evidentiary ruling is not to be lightly overturned," *Cummins*, 727 F.3d at 510, in this case, the district court's exclusion of the FMCSRs at trial was not harmless and warranted reversal because the court excluded relevant evidence that likely was the difference between Jones recovering the proportion of damages attributed to Defendant's negligence and not recovering any damages at all.[1] Accordingly, the district court erred in denying Jones' motion for a new trial based on the district court's exclusion of the FMCSR evidence.

For the foregoing reasons, I respectfully dissent and would reverse the district court's denial of Jones' motion for new trial.

---

[1] Defendant's citation to *Zickes v. Cuyahoga County*, 700 F. App'x 475 (6th Cir. 2017), is inapposite for the proposition that any error in excluding the FMCSR evidence was harmless. In that case, this Court rejected Zickes' claim that he was engaged in protected speech under the First Amendment and only then determined that any erroneous exclusion of evidence related to that claim was harmless because "without activity protected by the First Amendment, the scope of any retaliation is no longer relevant." *Id.* at 477. That First Amendment case is easily distinguishable from the present case, in which evidence of the FMCSRs was relevant to the jury's determination of Defendant's negligence under Tennessee law, and its exclusion was not harmless given Tennessee's modified comparative fault system.